**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**CASE NUMBER 11-80180-CV-RYSKAMP/VITUNAC**

WAUSAU UNDERWRITERS INSURANCE
COMPANY,

       Plaintiff,

v.

CAREERS USA, INC.,

       Defendant.

_____/

**WAUSAU'S MOTION FOR SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Wausau Underwriters Insurance Company, pursuant to FRCP 56 and S.D.Fla.L.R. 56.1,

moves for summary judgment as to all counts in its complaint [DE 1], and says:

*1. Background*

1.    This dispute is about workers' compensation insurance premiums and the insured's

(Careers) refusal to pay them.

2.    Workers' compensation coverage is required of nearly every employer in Florida.

Chapter 440 of the Florida Statutes is Florida's workers' compensation act and it is similar to

those of other states. The act codifies the concept that, in exchange for assuming the expense of

getting coverage, the employer will be immune from tort suits brought by its employees who get

hurt at work. Thus the workers' compensation laws effect a mutual renunciation of common law

rights and defenses of employers and workers. The goal of the system is to provide for the quick

and efficient delivery of benefits to injured workers.[1] In this regard, among others, workers'

compensation insurance is unusual in that its primary purpose is the protection of third parties,

---

[1] Section 440.015, Florida Statutes.

though a workers' compensation claimant and the carrier do not occupy the position of insured and insurer. *Florida Erection Services, Inc. v. McDonald*, 395 So.2d 203 (Fla. 1st DCA 1981). The policy benefit accorded to employers is tort immunity,[2] and that is all employers get when they buy a workers' compensation policy.[3] This immunity is a significant benefit, however; there is no dollar limit to a workers' compensation claim so there is no possibility of excess liability, which exposure to the insured is the basis for imposing a duty of care on a carrier with respect to claims handling. *See, e.g., Perera v. U.S. Fidelity and Guaranty Company*, 35 So.3d 893 (Fla. 2010).

3.      Under loss-sensitive workers' compensation policies such as are at issue here, workers' compensation premium can and usually does fluctuate based on losses (claims activity). Workers' compensation is a regulated line; all carriers writing workers' compensation in the voluntary market must abide by the regulatory filings of NCCI, the National Council on Compensation Insurance (the ratemaking organization for Florida and dozens of other states). NCCI publishes several *Manuals* in which are contained rules, classifications, and rates.[4] The premium for a standard workers' compensation policy is fixed in that it does not depend on losses. It is also not charged beyond the policy period; the insured's liability to the carrier ends with the policy. However, standard workers' compensation policies are significantly more expensive than loss-sensitive policies since the insured does not share in the risk of loss development. Thus, this type of policy is appropriate for an insured that needs to know exactly what its premium will be and is willing to pay more to get both that certainty and termination of

---

[2] Section 440.11, Florida Statutes.

[3] There are some minor exceptions to this rule, such as when the employer himself elects to be covered by, and receive benefits under, the policy or the employer pays additional money for the issuance of what are commonly called special handling instructions, which give the employer the right to participate in claims decisions. No special handling instructions applied to the policies at issue.

[4] The NCCI *Manuals* are copyright and so cannot be copied and produced. They are, however, inexpensive and easily had directly from NCCI. Wausau recognizes that the court may not have ready access to the *Manuals* and the rules cited in this motion and supporting affidavit, and requests leave, upon the court's direction to do so, to provide

its obligation when the policy ends. The standard workers' compensation premium is computed pursuant to NCCI *Basic Manual* (2001 ed.) MISCELLANEOUS RULES-FLORIDA (Florida Workers Compensation Premium Algorithm); the retrospective premium for the loss -sensitive policies Wausau issued to Careers, however, is computed pursuant to the Retrospective Premium Endorsement Large Risk Alternative Rating Option  (LRARO) (*see* the Affidavit of Justin Gauthier), and NCCI's *Retrospective Rating Plan Manual*.

4.      Retrospectively rated workers' compensation policies (retros) are significantly cheaper than standard policies because they are priced pursuant to the actuarial assumption that the insured will share in the risk of loss development. Pursuant to a retro, the carrier issues retrospective premium computations (called adjustments) every year beginning about six months after policy termination. The adjustment is based on the preceding year's loss activity and the premium is computed pursuant to the formula in the LRARO, section A (Retrospective Premium Formula). These annual adjustments continue until such time as all claims resolve or Wausau and Careers agree to terminate retrospective rating.

5.      Wausau, Career's former workers' compensation carrier for three policy periods, audited the policies and computed and issued retrospective adjustments, pursuant to the policies and their rating plan. The audits and adjustments have resulted in a total obligation of $221,430.00, which Careers has refused to pay. *See* the Affidavit of Justin Gauthier.

### II. Legal Standards Governing the Motion

6.      FRCP 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Once the movant satisfies the burden of

purchased copies of these publications to the court.

production by offering sufficient evidence to support the motion, the party opposing the motion must then respond by showing that there is a disputed issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). A showing of metaphysical doubt as to material fact is insufficient. *Matsushita Electric Industrial Company, Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact, the court may grant summary judgment if the motion and supporting materials show that the movant is entitled to it." FRCP 56(e)(3).

### III. Wausau's Claims, Regulatory Rule, and Careers' Defenses

#### Wausau's Claims

7.       Wausau has alleged three counts (one for each policy year) against Careers for breach of contract. Under Florida law,[5] a breach of contract cause of action requires allegation of (i) the existence of a contract; (ii) a breach of the contract, and (iii) damages resulting from the breach. *Marseilles Capital, LLC v. Gerova Financial Group, Ltd.*, 2011 WL 1838555 (S.D.Fla. 2011), citing to *Rollins v. Butland*, 951 So.2d 860, 876 (Fla. 2nd DCA 2006). The elements of this cause of action are alleged in DE 1, paragraphs 12, 17 and 22 (the contracts); 14, 19 and 24 (the breach), and 15, 20 and 25 (damage from the breach). The Affidavit of Justin Gauthier, submitted with this motion, establishes that the retrospective premiums remain unpaid, which is a breach of an express term of the policies, and Wausau has been damaged by that nonpayment.[6] Careers has raised six affirmative defenses, the fifth one of which is that Wausau's contract claims fail to state claims upon which relief can be granted "… in that… it has failed to allege all elements required to properly plead breach of contract and has failed to attach a copy of the fully

---

[5] In a diversity case such as this, the court applies Florida substantive law. *Pendergast v. Sprint Nextel Corporation*, 592 F.3d 1119, 1132-33 (11th Cir. 2010).
[6] LRARO, section B(3), in relevant part: "[a]fter each calculation of retrospective premium, you [the insureds

executed and complete policies/contracts" [DE 14 *at* pages 4-5]. The elements of the claims for breach of contract are adequately pled and Mr. Gauthier's affidavit establishes (*at* paragraphs 3-5) that copies of the policies are attached to the complaint and were issued to Careers. However, for the reasons and on the authorities *infra*, however, and though Wausau briefly addresses the defenses herein, Careers cannot here raise defenses to Wausau's claims to retrospective premium.4

*Regulatory Rule and Exhaustion of Administrative Remedies[7]*

8.      The clear and unambiguous provisions of the policies and regulatory rule demonstrate that the policies provide for computation- and payment- of retrospective premium to be calculated solely by Wausau upon each annual adjustment, as stated in the LRARO:

**B. Premium Calculation and Payments**

> 1. We [Wausau] will calculate the retrospective premium using all incurred losses we have as of a date six months after the rating plan period [the policy term] ends and annually thereafter.

> 2. After any calculation of retrospective premium, you and we may agree that it is the final calculation. No other calculation will be made unless there is a clerical error in the final calculation.

> 3. After each calculation of retrospective premium, you will promptly pay the amounts due us, or we will refund the amount due you. Each insured is responsible for the payment of all standard premium and retrospective premium calculated under this endorsement.

A copy of the LRARO is extracted from the policies (it is largely the same in all the policies) and attached as exhibit 1 for ease of reference. Copies of the retrospective elections are attached as exhibit 2. Neither the form of, nor language in, the policies nor the estimated, standard or retrospective premiums were subject to negotiation and the form and language of the policies and their endorsements were specifically

---

designated in the policies] will promptly pay the amount due us, or we will refund the amount due you."
[7] Pursuant to S.D.Fla.L.R. 56.1(a), a statement of material fact as to which Wausau contends there is no issue to be tried is filed with the motion though, for the reasons and on the authorities briefed, Careers is barred as a matter of law from contesting Wausau's claims to premium by disputing facts or otherwise.

5
Morris & Morris, P.A.

approved by the State of Florida Office of Insurance Regulation (OIR). Wausau provided workers' compensation and employers' liability insurance to Careers using only approved policy forms, endorsements, and rating plans based on premium formula and factors approved by the State of Florida. *See* Sections 627.191 and 627.211, Florida Statutes, and the Affidavit of Justin Gauthier. As held in *Florida Welding & Erection Service, Inc. v. American Mutual Insurance Company of Boston,* 285 So. 2d 386, 389 (Fla. 1973), the statutes regulating workers' compensation insurance provide notice to the insured as a matter of law of the provisions of state law; notice also results from the policies by the provision that premium "will be determined by our manuals of rules, rates, rating plans and classifications...." and the retrospective premium endorsements' and plan provisions.

9.      Wausau and Careers thus necessarily understood that (a) the estimated, standard, and retrospective premiums were not subject to negotiation and (b) Wausau could provide coverage only at approved rates and pursuant to approved rules and rating plans. *See* Sections 627.191 and 627.211, Florida Statutes; *see, e.g., Continental Casualty Company v. First Financial Employee Leasing, Inc.,* 716 F.Supp.2d 1176 (M.D.Fla. 2010) (exhaustion of administrative remedies required where the carrier issued the insured large deductible policies pursuant to a large deductible program and computed the premiums pursuant to the policies and program). Section 627.062(1), Florida Statutes, forbids an insurer from charging rates for workers' compensation insurance that are "excessive, inadequate, or unfairly discriminatory." In other words, rates must be high enough to protect insureds collectively by preventing the insolvency of insurers, but low enough to provide what the regulator believes to be a non-excessive and fair premium. No insured is allowed to pay a lower premium than that approved by the regulator. The rights of any one insured are thus necessarily subservient to the workers' compensation regulatory system that establishes and regulates this line of insurance.

10.      As a result, the policy contracts must be construed and performed in the context of the Florida Statutes and regulatory rules. *Grant v. State Farm Fire & Casualty Company,* 638 So.2d 936 (Fla.

1994) ("[w]here a contract of insurance is entered into on matters surrounded by statutory limitations and requirements, the parties are presumed to have entered in such agreement with reference to the statute, and the statutory provisions become a part of the contract"). As shown below, Florida law and regulatory rule require Careers to pay the retrospective premiums determined by Wausau after the policy term, because the retrospective premium could not be computed without knowing the losses that accrued during the annual period preceding each retrospective adjustment.

11.     Consistent with the policies' LRARO, Wausau computed the retrospective premium due from Careers which involved an examination of the claims activity for the period preceding the adjustments and application of the retrospective formula in the LRARO ("[r]etrospective premium is the sum of basic premium and converted losses, multiplied by the tax multiplier, subject to minimum and maximum provisions when applicable...". LRARO, section A; basic premium is defined in section A, as are the components of the losses that figure into the formula. The retrospective rating plan parameters (the factors that are part of the formula to determine retrospective premium) are in the LRARO schedule. Wausau determined by such means that Careers owes retrospective premium as a result of claims costs and expenses that had been advanced by Wausau, a portion of which is Careers' responsibility pursuant to the rating plan it requested. The retrospective premiums have not been paid. *See* the Affidavit of Justin Gauthier. Careers' failure to pay Wausau the retrospective premiums due effectively and impermissibly depressed Careers' rates to levels lower than those permitted by the State regulators for the types of exposures presented by its operations. *See* the Affidavit of Justin Gauthier. Careers' dispute about payment to Wausau also potentially impacts the former's experience modifier since a risk's eligibility for the NCCI Statistical Plan filed with and approved by OIR is based on the amount of subject premium including losses. *See, i.e.*, NCCI *Experience Rating Plan Manual* (2003 ed.)©, Rule 1(C)(3) (Losses) "[I]ncurred losses for each classification in the experience

period are those reported according to the Statistical Plan. (a) No loss is excluded from the experience of a risk even if the employer was not responsible for the accident that caused such loss;" Rule 5- Special Rating Conditions, Subsection A(2)(a)(1), Rule 1, General Explanations, Section C(1) and Rule 2- Experience Rating Elements and Formula, Section A(1)(a). *Id.* Claims activity (losses) thus directly impacts experience rating. *See also* the Affidavit of Justin Gauthier. Charges for those losses, for which Careers is obligated to reimburse Wausau in part pursuant to the retrospective premium formula and plan parameters, thus necessarily implicate State-approved NCCI regulatory rules and a dispute about them cannot be entertained in the context of this litigation but must have been administratively redressed. *See* the Affidavit of Justin Gauthier.

12.     In addition to the policy provisions cited herein, NCCI, the State-authorized rating organization for Florida and several other jurisdictions, requires carriers operating in Florida to implement and abide by the rules and regulations of NCCI, as filed by NCCI and approved by OIR. NCCI *Basic Manual©*, *SCOPES Manual©*, *Experience Rating Plan Manual©* and *Retrospective Rating Plan Manual©* contain the rules and regulations of NCCI as regard premium calculation; the Florida State Special Audit Rules; the factors involved in experience rating, definitions of hundreds of occupational classifications for which NCCI has developed the required rates, and the regulatory rules governing retrospective rating. These rules are mandatory; the carriers cannot deviate from them except in the case of a specialized rating plan for which they may be required to secure approval from OIR.

13.     Wausau billed Careers for retrospective premiums and Careers refused to pay them, necessitating this litigation. Because of Careers' refusal to pay Wausau the contractually agreed retrospective premiums, it was able to save hundreds of thousands of dollars in workers' compensation premium, thereby gaining an unfair competitive advantage over other entities that

paid their required share of premium and obtaining the benefit of coverage for their employees- and the concomitant tort immunity provided by Section 440.11, Florida Statutes- without the required payment for those valuable benefits.

14.     Careers forced Wausau to file this suit to recover the retrospective premiums due since Wausau has no other means by which to secure payment. Careers has not, at any time before or during the course of this litigation, taken any known step to exhaust or even initiate the administrative remedies required of it in contesting Wausau's application of NCCI rules, rates, classifications, and approved rating plan to Wausau's calculation of retrospective premiums due. If Careers wanted to object to Wausau's premium computations and its application of NCCI rules, rates, or rating plan, it was *required* to have administratively challenged Wausau's calculation of premium. The Florida Statutes set forth a comprehensive administrative process that *must* be pursued by all workers' compensation insureds in these circumstances. Careers failed to initiate and exhaust its administrative remedies, and waived the availability of the administrative process through its engagement in this litigation and complete inaction as relates to pursuit of administrative redress. Because of this behavior, Careers is now barred from raising any defense related to the application of NCCI rule and the rating plan used in Wausau's calculation of the retrospective premiums owed.

15.     Because workers' compensation insurance is such a heavily regulated area, *see, e.g., Bristol Hotel Management Corporation v. Aetna Casualty & Surety Co.*, 20 F.Supp.2d 1345 (S.D.Fla. 1998), the courts have determined that several aspects of it are uniquely within the purview of administrative agencies and entities, to which have been delegated certain powers and functions by statute, that possess the actuarial and technical expertise to determine, enforce and interpret rates, premiums, and the meaning and application of NCCI rules and regulations and carrier rating plans. NCCI rules and regulations are binding on carriers in Florida and the other

states in which NCCI is the state-authorized rating organization. *See, e.g.,* NCCI *Basic Manual* (2001 ed.)© (Application of Manual Rules) ("...the National Council on Compensation Insurance, Inc. has filed on behalf of all its member carriers all rates and rules contained in this manual with respect to those rules. [A]ccording to Sections 627.191 and 627.211, Florida Statutes, every insurer must adhere to the filings made on its behalf by NCCI...."). The determinations and directives of OIR are also binding on workers' compensation insurers in Florida.

16.    Where a Florida insured has a dispute with its carrier concerning the computation and application of experience modification factors, occupational classifications, the meaning, interpretation, and application of rules contained in NCCI *Manuals*, or the computation of premium by the carrier, the insured *must* avail itself of the dispute resolution and appeals process administered by NCCI. This process was established for insureds by the authority of Section 627.291(2), Florida Statutes. *See also* NCCI Appeals Board Objectives and Rules ("[t]he grievances which are to be heard by the Florida Workers Compensation Appeals Board... shall be those relating to experience modification factors, classification assignments *and manual rules*") (italics added). What a Florida insured cannot do is contest in the trial court, on the basis of claims mishandling or otherwise, its carrier's claim to workers' compensation premium due.[8]

17.    The Florida Workers Compensation Appeals Board was established to provide a mechanism by which aggrieved insureds "may obtain review of the application of the rules of the workers compensation system to their individual policies." *See* NCCI Appeals Board Objectives

___

[8] Every time an insured raises the argument that it does not owe workers' compensation premium because its carrier mishandled claims, litigation of how those claims were handled is a prospect. Contested workers' compensation claims are resolved by the JCCs- the judges of compensation claims- in proceedings to which the insured/employer is party. The "...JCCs have exclusive subject matter jurisdiction over disputed workers' compensation claim matters...". *Hack v. Norris Drywall/Amerisure Insurance Company,* 46 So.3d 1137 (Fla. 1st DCA 2010); *see also* Section 440.33, Florida Statutes. Careers is not free to try to revisit, here, the method and manner in which its employees' workers' compensation claims were administered, having had that opportunity in the context of the claims proceedings themselves, and this court lacks jurisdiction to usurp the authority of the JCCs and entertain a

and Rules, *supra*. If an insured does not undertake the administrative dispute resolution and appeals process as here described, it is barred from contesting or mitigating, via defense or affirmative claim, the carrier's determination of premium in subsequent litigation. *American Home Assurance Company v. The Phineas Corporation*, 347 F.Supp. 2d 1231 (M.D.Fla. 2004),[9] contains an exhaustive discussion on this point, the court observing that- regardless of the method and manner in which the insured's audit may have been conducted by the carrier- the insured's challenges to the final premium computed by the carrier on the basis of improper classification and other premium calculation defenses are *improper* because an insured's failure to exhaust the administrative remedy provided by Section 627.371, Florida Statutes *precludes a challenge of the billed rates* (citing to *Florida Welding & Erection Service, Inc. v. American Mutual Insurance Company of Boston, supra*, and *International Patrol and Detective Agency, Inc. v. Aetna Casualty & Surety Co.*, 396 So.2d 774 (Fla. 1st DCA 1981)). *See also State Farm Mutual Automobile v. Gibbons*, 860 So.2d 1050 (Fla. 5th DCA 2003) (seeking administrative review is an insured's exclusive remedy for a claim based on an insurer's purported violation of a statutory prohibition against insurers including specific funds in their rate bases and, further, a stay of a circuit court proceeding to permit the insured to exhaust its administrative remedies is error since exclusive jurisdiction for judicial review of administrative action lies solely with the courts of appeal, citing to Section 120.68(2)(a), Florida Statutes). Even where an alternative judicial remedy is explicitly recognized in the Administrative Procedure Act (Chapter 120 of the Florida Statutes), a party cannot dispense with the exhaustion of administrative remedies requirement. *Criterion Insurance Company v. State of Florida, Department of Insurance*, 458

---

claims handling protest.

[9] *Phineas* involved not only the carrier's claim to premium but the insured's counterclaim for fraud, negligent misrepresentation and rescission. The court granted the carrier's motion for summary judgment for the premiums and judgment in favor of the carrier on the counterclaim, finding among other things that the insured's counterclaim challenged the calculation of the policy premiums and its causes of action were thus improper. .

So.2d 22 (Fla. 1st DCA 1984). In this context, Careers must have pursued its available administrative remedies but has not.[10]

18.    Careers is barred as a matter of law from using the judicial branch of state or federal government to challenge its carrier's computation of workers' compensation retrospective premiums- save on appeal, upon conclusion of the administrative process, which process is regulated by the executive branch of Florida State government. This court, sitting in diversity and applying Florida substantive law, is required to so find and to enter summary judgment for Wausau for the premiums claimed. *See* Article II, Section 3 of the Florida Constitution:

> The powers of the state government shall be divided into legislative, executive and judicial branches. No person belonging to one branch shall exercise any powers appertaining to either of the other branches unless expressly provided herein.

By exercising jurisdiction to hear and adjudicate a dispute about a workers' compensation carrier's premium demands, this court would impermissibly substitute its judgment for OIR's regulatory authority. *Odham v. Foremost Dairies, Inc.*, 128 So.2d 586 (Fla. 1961) ("promiscuous intervention by the courts in the affairs of administrative agencies, except for the most urgent reasons, will inevitably result in the dethronement of the agencies and the substitution of the courts in their place"). If premium determinations are made in the context of litigation, instead of administratively, the risk of inconsistent findings and computations, made by a judge or jury without the actuarial and technical expertise to regulate insurance premiums to ensure both carrier solvency and fairness to insureds, is likely and the administrative scheme thereby intolerably undermined. The exercise of such power and authority would constitute an impermissible encroachment by

---

[10] Notwithstanding the permissive language contained in some of the rules and statutes as regards pursuit of administrative remedies, Careers was in fact required to first exhaust its administrative remedies: "Appellant contends that appeals to the Commission are not mandatory, since Section 380.07(2) merely says "may" appeal, rather than "shall" appeal, and is therefore permissive in nature. This argument misconstrues the doctrine of exhaustion of administrative remedies, which is based on the mere availability of administrative review procedures. In Florida Welding & Erection Service, Inc. v. American Mutual Insurance Co., 285 So.2d 386 (Fla. 1973), the Supreme Court of Florida held that a summary judgment had been properly granted for failure to exhaust administrative remedies where a method of appeal to an administrative department was available. The statute involved in that case used the same kind of permissive language found in Section 380.07." *General Electric Credit Corporation v. Metropolitan Dade County*, 346 So.2d 1049, 1053-1054 (Fla. 3rd DCA 1977).

one branch of government upon another- and in this case, by the federal government upon state government also.

19.     As observed in *Phineas*, *supra*, courts in other states have recognized this ubiquitous principle and the reasons underlying it and also correctly granted summary judgment in favor of carriers and awarded damages in the amount of the premiums due. In *Liberty Mutual Insurance Company v. John Gailer, Inc.*, 1997 WL 328074 (S.D.N.Y. 1997), the district court awarded summary judgment to the carrier for its final premium. In *Liberty Mutual*, the insured claimed improper classification by the carrier. Given policy language nearly identical to that of the policies here (unsurprising since the policy form is mandated and copyright by NCCI), the district court found that the defense of improper classification was not within the court's jurisdiction but rather within the jurisdiction of the insurance regulators. *See also Investors Insurance Company of America v. Karbel Wholesale Autos, Inc.*, 148 Misc.2d 933, 569 N.Y.S.2d 323 (N.Y. App. Div. 1990) (awarding summary judgment to workers' compensation insurer and finding that "it is well settled that the defense of improper classification is not within the jurisdiction of the court below and cannot properly be raised in that forum"). The same result is necessary here; *Florida Welding* and the other cited authorities mandate summary judgment in this case as to Wausau's counts I-III for the retrospective premiums due. With the exception of its fifth, Careers' defenses and denials are effectively challenges to and protests of Wausau's calculation of premium under the policy and approved rating plan[11] and disputes over the application of

---

[11] Careers' defenses are addressed in the next section; all of them are insupportable and none prevents entry of summary judgment. They indicate as well a common misunderstanding of this line of coverage. Unlike the usual liability policy, workers' compensation- as noted- is unique. It is in the context of an entire chapter of the Florida Statutes, various administrative code sections, regulatory rules, and administrative and ratemaking statutes that workers' compensation coverage must be and is provided. For example, Careers' second defense is that Wausau breached the "alleged" policies. The only way in which Wausau could have done so was by failing to assume the compensability of a (compensable) workers' compensation claim submitted by one of Careers' employees, thus depriving Careers of the benefit of its bargain (tort immunity from suit by the injured worker). There is no evidence to support this defense because such breach did not occur; what the insured buys when it gets a workers' compensation policy is tort immunity pursuant to Section 440.11, Florida Statutes- and that is all it buys unless *it*

*Manual* rules and State-authorized plan documentation that this court is without jurisdiction to entertain. Under *Florida Welding, supra,* Careers cannot use this forum to contest Wausau's claim to premium given an available but waived administrative remedy.

20.     In an unreported 1998 decision of the Middle District of Florida, the United States District Court, in *Ameri-Force, Inc. v. U.S. Fidelity & Guaranty Company,* case number 97-866-CIV-J-20C, granted a carrier's motion to dismiss, citing *Florida Welding* and *International Patrol,* where the plaintiff alleged that its workers' compensation insurer engaged in practices to inflate the applicable experience modifier. Judge Schlesinger held as follows:

> Defendant argues, however, that the entire case should be dismissed because Plaintiff has failed to exhaust its administrative remedies pursuant to Florida Statutes section 627.291 and Florida case law interpreting that statute. *See, Fla. Stat. Section 627.291; International Patrol ...approved,* 419 So.2d 323 (Fla. 1982); *Florida Welding ...* The Court agrees with the Defendant that Plaintiff has attempted to plead around this requirement and that its claims must be dismissed for failure to exhaust administrative remedies. The Court rejects Plaintiffs attempt to distinguish between "rate" and "premium" and finds the above-cited cases controlling. Accordingly, Defendant's Motion to Dismiss (Doc. No. 13) is **GRANTED.** The Clerk is directed to close the file.

The District Court's dismissal was affirmed. *Ameri-Force, Inc. v. U.S. Fidelity & Guaranty Company,* 170 F.3d 188 (11th Cir. 1999). *See also FCCI Insurance Company v. NCM of Collier County, Inc.*, 15 So.3d 5 (Fla. 2nd DCA 2009) (a premium dispute involving another retrospectively rated workers' compensation policy and carrier claim to retrospective premium due, in which the appellate court granted the carrier's petition for writ of certiorari and quashed the order of the trial court that denied the carrier's motion for summary judgment for retrospective workers' compensation premium due, holding that a workers' compensation insured must avail itself of the mandatory administrative process to challenge its carrier's demand for premium) and *Continental Casualty Company v. First Financial Employee Leasing, supra* (insured whose premiums were computed pursuant to a large deductible program required to

---

bargains and pays for special servicing instructions that permit it involvement in the claims administration process. Second, and more importantly for purposes of this motion, no Florida workers' compensation insured is permitted to circumvent the administrative process and contest in the trial courts the charges and expenses that result in a

administratively redress the carrier's computation of premiums).

21.     Careers is obligated to pay the retrospective premiums owed. That is what the policies' rating plans and law require, and the policy forms were specifically approved by the State of Florida, an action unique to the workers' compensation system and undertaken by those agencies delegated the authority to establish and oversee that system to ensure carrier solvency and uniform treatment of similarly situated insureds. To protect all insureds by ensuring the solvency of their carriers, payment of premiums is the law in Florida.

22.     It is settled law in Florida that applicable insurance statutes are incorporated into every insurance policy. The Florida Supreme Court, in *Grant v. State Farm Fire & Casualty Co.,* 638 So. 2d 936 (Fla. 1994), held that, where a contract of insurance is entered into on matters surrounded by statutory limitations and requirements, the parties are presumed to have entered into such agreement with reference to the statute and the statutory provisions become a part of the contract.   *See also State Farm Fire & Casualty Company v. Palma,* 629 So.2d 830, 832 (Fla. 1993) (the terms of Section 627.428, Florida Statutes, are an implicit part of every insurance policy in Florida); *Weldon v. All American Life Insurance Company,* 605 So. 2d 911, 914 (Fla. 2nd DCA 1992) (where a contract of insurance is entered into on a matter surrounded by statutory limitations and requirements, the parties are presumed to have entered into such agreement with reference to the statute and the statutory provisions become a part of the contract); *Marine Insurance Company v. Allyn,* 333 So.2d 497 (Fla. 1st DCA 1976), and *Allison v. Imperial Casualty and Indemnity Company,* 222 So.2d 254, 256 (Fla. 4th DCA 1969). Accordingly, Careers is held as a matter of law to have knowledge of incorporated Florida law and that knowledge precludes any claim of reliance on what would be an illegal rate or any claim of ignorance of the required administrative scheme.

23.     Where, as here, the insured has raised defenses to the carrier's calculation of premium without first exhausting its administrative remedies, those defenses must be, and have been,

premium obligation.

stricken:

> Phineas also alleges that American Home cannot reallocate payroll between
> classification codes 8861 and 9110 because of its "failure to issue required
> endorsements regarding employee classifications." (Dkt. 240, tab A, §86.) As
> American Home correctly points out, this defense involves an interpretation of the
> Basic Manual approved by the OIR [the Office of Insurance Regulation of the
> State of Florida] and an interpretation of the Florida State Special Audit Rules
> (1991 Special Audit Rules"), F.A.C. Rule 4-189.003(4) (2000). As such, this is an
> argument that should be raised in Phineas' state administrative proceedings, not in
> this Court.

*American Home Assurance Company v. The Phineas Corporation, supra,* at 1237; *accord, FCCI*

*Insurance Company v. NCM of Collier County, Inc., supra.*

24.     To date, Careers has not sought to initiate or exhaust the administrative remedies

available to it to dispute Wausau's computations of the retrospective premiums. Wausau's

computations are predicated on the governing rating plan (*see* the Affidavit of Justin Gauthier).

Careers' dispute about the interpretation and application of this plan should have been raised by

it in the administrative process, as provided by NCCI rule and Florida Statute. Its failure to have

done so precludes it as a matter of law from now contesting Wausau's claims and also from

raising any defenses or claims relating to Wausau's computations. Careers could and should have

administratively challenged the premium determined by Wausau if it contested it.  However, it has not

made any attempt to ask the rating organization for any review of Wausau's determinations pursuant to

the policies. NCCI's rates, rating system, classifications, and rules have all been incorporated into the

policies, as has the LRARO, by operation of law and the LRARO's language (*see* the Schedule to the

LRARO).  If Careers had requested review by NCCI, the OIR- the second tier of administrative review-

would have had the opportunity to review the matter and the appropriate appellate court- the final tier of

administrative review- would then have had the benefit of a record developed by the agencies with the

expertise to understand and regulate the line to ensure carrier solvency and uniform treatment of

similarly situated insureds. Careers' disregard of the entire administrative process leaves this court

with no choice, jurisdictionally, but to grant this motion. Wausau is accordingly entitled to summary

judgment on counts I-III of its complaint.

### *Careers' Defenses*

25.     As observed, an insured's defenses, in trial court litigation, to its workers' compensation

carrier's claim for premium must be, and are, stricken. *Phineas, supra*. Notwithstanding, Wausau

addresses Careers' defenses here, bereft of support they be.

*First Affirmative defense*- "CareersUSA has complied with and performed all of its promises, obligations and duties to Plaintiff, if any, under the alleged policies/contracts." *See* the Affidavit of Justin Gauthier: Careers has not paid for the coverage provided, as required by the policies and the rating plan- though it has continued to benefit from the tort immunity provided by the coverage.

*Second Affirmative Defense*- "Plaintiff breached the alleged policies/contracts with CareersUSA." Paragraph 15 of the Affidavit of Justin Gauthier establishes that Wausau has done everything required of it under the policies. The benefit to *the insured* of workers' compensation coverage is the provision of tort immunity. The compensable claims of Careers' employees have been and are being administered and paid. For Wausau to have breached the policies, it would have to have failed to administer and pay a compensable claim, subjecting Careers to suit by the claimant/injured employee, and that has not occurred. *See also Sachi v. Labor Ready Southeast, Inc.*, 2010 WL 3259916 (S.D.Fla. 2010), citing to *Runnemede Owners, Inc. v. Crest Mortgage Corporation*, 861 F.2d 1053, 1057-8 (7th Cir. 1988) (a party intending to controvert the claimant's general allegation of performance is required to identify those conditions he thinks are unfulfilled. Here, in any event and given the Gauthier affidavit, Wausau's performance is a matter of record evidence, not allegation).

*Third Affirmative Defense*- "CareersUSA is entitled to a set-off, credits and reimbursements under the alleged policies/contracts. Plaintiff has failed to provide appropriate credits and release "hold backs" it is holding under the alleged policies/contracts to (*sic*) CareersUSA." *See* the Affidavit of Justin Gauthier that details, with extensive supporting documentation including but not limited to loss runs, the amount due and unpaid, and establishes the methodology by which such amount is computed. No credit due has been unaccounted for and there is no "hold back" to release.

*Fourth Affirmative Defense*- "Plaintiff's recovery, if any, is limited to the terms, conditions, limitations, exclusions and other provisions of the alleged policies/contracts." This statement is incorrect as a matter of law. Workers' compensation policies do not themselves contain the entire body of rules and regulations pursuant to which the coverage is provided and administered. All standard NCCI-approved general policy terms for example, include by reference "...our [referring to NCCI, not the carrier, as NCCI is the drafter of the policy form; hence, NCCI's copyright designation in the general terms and conditions of the policies] manuals of rules, rates, rating plans and classifications." *See* the policies' General Section- Part Five-

Premium (exhibits 1-3, DE 1). As well, statutes existing when the policy issues are part of the contract. *Grant v. State Farm Fire & Casualty Company*, *supra*. The applicable terms and conditions of a workers' compensation policy, then, given the comprehensive regulatory framework surrounding the coverage, are more extensive than those of the actual policy itself and include, by operation of law and rule, regulatory rules, manuals, and statutes.

*Fifth Affirmative Defense-* "Plaintiff has failed to state a claim upon which relief can be granted in Counts I, II and III, in that, (*sic*) it has failed to allege all elements required to properly plead breach of contract and has failed to attach a copy of the fully executed and complete policies/contracts." The sufficiency of Wausau's causes of action is addressed in paragraph 6, *supra*, and in any event failure to state a cause of action is not an affirmative defense but a denial ("[i]f an affirmative defense points out a defect in the prima facie case of a plaintiff, that affirmative defense is not actually an affirmative defense, it is a denial. *See* <u>*Zeron v. C&C Drywall Corporation, Inc.*, 2009 WL 2461771 (S.D.Fla. 2009)</u>. Accordingly, the defendant's Seventh Affirmative Defense... shall be considered a denial." . " *SACE BT S.P.A. v. ITALKITCHEN INTERNATIONAL, INC.*, 2012 WL 37391 (S.D.Fla. 2012). As for the policies, the Affidavit of Justin Gauthier establishes in paragraphs 3-5 that copies of them are attached to the complaint.

*Sixth Affirmative Defense-* "CareersUSA has paid any and all amounts due under any alleged policy/contract." *See* the Affidavit of Justin Gauthier: Careers has not paid the amounts due under the policies and their rating plan.

## IV. Conclusion

26.    Wausau has made its *prima facie* case for breach of contract as to all three policy years.

Careers cannot assert affirmative defenses to Wausau's claims in this litigation and, even if it

could, all of them are deficient. Summary judgment is therefore mandated as to counts I-III of

the complaint.

WHEREFORE, Plaintiff, Wausau Underwriters Insurance Company, respectfully requests that

the court grant this motion and enter summary judgment on counts I-III of the complaint, and

judgment against defendant, CareersUSA, Inc., for $221,430.00.

Respectfully submitted,

Mary Morris, FBN 55573
Morris & Morris, P.A.
Attorneys for Wausau
777 South Flagler Drive
Suite 800- West Tower
West Palm Beach, Florida 33401
Telephone 561.838.9811
Facsimile 561.828.9351
E-mail momorris@morris-morris.com

## CERTIFICATE OF SERVICE

I certify that on 23 January 2012 I electronically filed the foregoing with the Clerk of the Court

by using CM/ECF. I also certify that the foregoing is being served this day on the following

attorney, via transmission of Notices of Electron0ic Filing generated by CM/ECF or in some

other authorized manner for those counsel or parties who are not authorized to receive Notices of

Electronic Filing:

Jennifer O. Johnson, Esquire
Brian S. Dranoff, Esquire
CareersUSA, Inc.
6501 Congress Avenue, Suite 200
Boca Raton, Florida 33487

Mary Morris

# EXHIBIT 1

085200801079300060

## RETROSPECTIVE PREMIUM ENDORSEMENT
## LARGE RISK ALTERNATIVE RATING OPTION
## CAREERS USA INC

This endorsement is added to Part Five (Premium) because you chose to have the cost of the insurance rated retrospectively, under the provisions of the Large Risk Alternative Rating Option where applicable. This endorsement explains the rating plan and how the retrospective premium will be determined.

This endorsement applies in the states listed in the Schedule. It determines the retrospective premium for the insurance provided during the rating plan period by all policies listed in the Schedule. The rating plan period is the one-year period beginning with the effective date of this endorsement.

The final premium for the policies designated in the Schedule is the sum of:

1. The premium for the insurance subject to this retrospective rating plan as shown in the Schedule, computed as explained in this endorsement, and referred to as the retrospective premium.

   The premium subject to this retrospective rating plan (the "subject premium") is the standard premium shown on the policy premium schedules, excluding premium for non-ratable catastrophe elements, aircraft passenger seat surcharges and occupational disease loadings.

   If the policy covers exposures in Massachusetts, "subject premium" also includes the Massachusetts All Risk Adjustment Program (ARAP) Premium.

2. The premium for the insurance not subject to this retrospective rating plan as shown in the Schedule, and computed in accordance with the provisions of such policies other than this endorsement.

   The premium not subject to this retrospective rating plan (the "non-subject premium") is that portion of the standard premium relating to non-ratable catastrophe elements, aircraft passenger seat surcharges and occupational disease loadings.

   "Non-subject premium" also includes premium elements that are not part of the standard premium, such as the expense constant and premium charges for foreign terrorism or for domestic terrorism, earthquakes, and catastrophic industrial accidents.

085200801079300061

**RETROSPECTIVE PREMIUM ENDORSEMENT**
**LARGE RISK ALTERNATIVE RATING OPTION**
**CAREERS USA INC**

**A. Retrospective Premium Formula**

Insurance policies listed in the schedule will be combined to calculate the retrospective premium. If the policies provide insurance for more than one insured, the retrospective premium will be determined for all insureds combined, not separately for each insured.

1. Retrospective premium is the sum of basic premium and converted losses, multiplied by the tax multiplier.

2. The basic premium is the sum of:

   - The basic premium, if any, developed in the states of Florida and Oregon by multiplying those states' subject premium by the basic premium factors for those states calculated in accordance with the filed retrospective rating plan rules and table values for those states, and

   - An amount determined by multiplying the basic premium factor shown in the Schedule by the total subject premium for the policies listed in the Schedule, then subtracting any basic premium developed in the states of Florida and Oregon.

3. Incurred losses means all amounts we pay or estimate we will pay for losses, interest on judgments, expenses to recover against third parties, and workers compensation and employers liability allocated loss adjustment expenses.

   Incurred losses do not include losses arising out of exposures for which the premium charge is defined as being not subject to this retrospective rating plan.

4. Converted losses are calculated by multiplying the incurred losses by the loss conversion factor. The loss conversion factor is shown in the Schedule.

5. Taxes are collected by applying a factor called the tax multiplier to the sum of the basic premium and the converted losses.

   For Florida and Oregon, the tax multiplier used is the tax multiplier filed as part of the retrospective rating plan values for those states. For all other states, the tax multiplier used is that value which would produce, when combined with the tax multiplier revenue developed in Florida and Oregon, an amount equivalent to applying the tax multiplier shown in the Schedule to the entire plan.

6. The retrospective premium will not be less than the minimum nor more than the maximum retrospective premium. The minimum and maximum retrospective premiums are determined by multiplying the minimum and maximum premium factors shown in the Schedule, respectively, by the subject standard premium.

08S200801079300062

# RETROSPECTIVE PREMIUM ENDORSEMENT
## LARGE RISK ALTERNATIVE RATING OPTION
### CAREERS USA INC

**B.  Premium Calculation and Payments**

1. We will calculate the retrospective premium using all incurred losses we have as of a date six months after the rating plan period ends and annually thereafter.

2. After any calculation of retrospective premium, you and we may agree that it is the final calculation. No other calculation will be made unless there is a clerical error in the final calculation.

3. After each calculation of retrospective premium, you will promptly pay the amount due us, or we will refund the amount due you. Each insured is responsible for the payment of all standard premium and retrospective premium calculated under this endorsement.

4. Notwithstanding the foregoing, we will, at the time of the first and second retrospective premium calculations, withhold the release of amounts that would otherwise be due you under the provisions of the retrospective rating plan. At the third retrospective premium calculation, we will refund to you any accumulated amount that may be due you according to that calculation.


**C.  Cancellation**

1. If any insurance subject to this endorsement is cancelled, the effective date of cancellation will become the end of the rating period for all insurance subject to this endorsement unless we agree with you to continue the rating period.

2. If we cancel for nonpayment of premium, the maximum retrospective premium will be based on the subject premium for the rating plan period, increased pro-rata to 365 days.

3. If you cancel, the subject premium for the rating plan period will become the minimum retrospective premium. The maximum retrospective premium will be based on the subject premium for the rating plan period, increased pro-rata to 365 days.

4. Section C. 3 will not apply if you cancel because:

   a.  all work covered by the insurance is completed;

   b.  all interest in the business covered by the insurance is sold; or,

   c.  you retire from all business covered by this insurance.

# EXHIBIT 2

MAY 31 2006 10:43 FR WAUSAU MNS          414 577 2219 TO 9-2077833261     P.05
RECEIVED  05/31/2006  12:03

### RETROSPECTIVE PREMIUM ENDORSEMENT
### LARGE RISK ALTERNATIVE RATING OPTION
### CAREERS USA INC.

#### Schedule

1. The premium for the following policies combined is to be computed in accordance with the provisions of this Retrospective Premium Endorsement:

   List of Policies:    WCJ-Y91-440784-016

2. The plan applies to the insurance provided by the Workers Compensation policies designated in paragraph 1 in the state(s) of:   all states

3. The plan parameters are:

   | | |
   |---|---|
   | Basic premium factor: | .139 |
   | Loss conversion factor: | 1.150 |
   | Tax multiplier: | 1.066 |
   | Minimum premium factor: | .690 |
   | Maximum premium factor | 1.875 |

ou, by signature of your qualified officer, agree to abide by the terms and conditions of this endorsement. Agreed to this _____ day of _____, _____.

SEE MASTER AGREEMENT          6/5

Signature

SEE MASTER AGREEMENT
Name (Printed)

Title

Endorsement effective from 03-01-2006 to the end of the policy period.

For attachment to Policy No.  WCJ-Y91-440784-016

This endorsement is executed by  Wausau Underwriters Insurance Company

End. Serial No. _____

Form No. 102

## RETROSPECTIVE PREMIUM ENDORSEMENT
## LARGE RISK ALTERNATIVE RATING OPTION
## CAREERS USA, INC.

### Schedule

1. The premium for the following policies combined is to be computed in accordance with the provisions of this Retrospective Premium Endorsement:

   List of Policies:   WCJ-Y91-440784-017

2. The plan applies to the insurance provided by the Workers Compensation policies designated in paragraph 1 in the state(s) of:   all states

3. The plan parameters are:

   | | |
   |---|---|
   | Basic premium factor: | .139 |
   | Loss conversion factor: | 1.150 |
   | Tax multiplier: | 1.080 |
   | Minimum premium factor: | .690 |
   | Maximum premium factor | 1.875 |
   | Informal cash flow deferral percentage: | 10% |

You, by signature of your qualified officer, agree to abide by the terms and conditions of this endorsement.  Agreed to this _____ day of _____, _____.

SEE MASTER AGREEMENT
_____
Signature

_____
Name (Printed)

_____SEE MASTER AGREEMENT_____
Title

Endorsement effective from 03-01-2007 to the end of the policy period.

For attachment to Policy No.   WCJ-Y91-440784-017

This endorsement is executed by  Wausau Underwriters Insurance Company

End. Serial No. _____

Form No. 102

### RETROSPECTIVE PREMIUM ENDORSEMENT
### LARGE RISK ALTERNATIVE RATING OPTION
### CAREERS USA INC

#### Schedule

1. The premium for the following policies combined is to be computed in accordance with the provisions of this Retrospective Premium Endorsement:

   List of Policies:    WCJ-Y91-440784-018

2. The plan applies to the insurance provided by the Workers Compensation policies designated in paragraph 1 in the state(s) of:   all states

3. The plan parameters are:

   | | |
   |---|---|
   | Basic premium factor: | .201 |
   | Loss conversion factor: | 1.150 |
   | Tax multiplier: | 1.087 |
   | Minimum premium factor: | .672 |
   | Maximum premium factor: | 1.880 |
   | Holdback Provision: | Refer to Section B: Premium Calculation and Payments |

   You, by signature of your qualified officer, agree to abide by the terms and conditions of this endorsement.  Agreed to this ____5th____ day of ___May_____, __2008__.

   _____
   Signature

   MARILYN  J. DUNOTON
   Name (Printed)

   C EO
   Title

Endorsement effective from 03-01-2008 to the end of the policy period.

For attachment to Policy No.  WCJ-Y91-440784-018

This endorsement is executed by Wausau Underwriters Insurance Company

End. Serial No. _____

Form No. 102